UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VINCENT RAYSHAWN CANADA,

      Petitioner,

                                               CASE NO. 1:13-CV-242

v.

                                               HON. ROBERT J. JONKER

UNITED STATES OF AMERICA,

      Respondent.
_____/

## OPINION AND ORDER

This matter is before the Court on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (docket # 1). The Court has carefully reviewed Petitioner's section 2255 motion, amendments to the motion (docket ## 3, 5, 6), and a motion he filed in his underlying criminal case (Case No. 1:09-cr-382, docket # 48) seeking to supplement his filings in this case (collectively, the "2255 motion"). The Court has determined that an evidentiary hearing is unnecessary to the resolution of this case. *See* Rule 8, RULES GOVERNING 2255 CASES; *see also Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (holding that an evidentiary hearing is not required when the record conclusively shows that the petitioner is not entitled to relief).

### BACKGROUND

    *1.    Indictment, Plea Agreement, and Plea Hearing*

On December 4, 2009, Grand Rapids Police Department officers pulled over the car Petitioner Canada was driving. (Case No. 1:09-cr-382, docket # 26, 40–41.) An officer approached. (*Id.*) According to Mr. Canada, the officer told him that he had been stopped because he was not

wearing his seat belt and because he had an air freshener hanging in his rearview mirror. (*Id.*) Upon coming closer to Mr. Canada, the officer realized that Mr. Canada actually was wearing his seat belt, but the officer pointed out that there was still an air freshener hanging from the mirror. (*Id.*) The officer asked Mr. Canada for his license, registration, and proof of insurance. (*Id.*) Mr. Canada had a permit, but not a full license. (*Id.*) Mr. Canada gave the officer his permit, proof of insurance, and registration. (*Id.*) The officer asked Mr. Canada to step out of the car. (*Id.*) Mr. Canada exited the car, but attempted to flee: "I get out of the car, and knowing that I did have a weapon on me, I tried to run from the scene and I got arrested." (*Id.* at 42.) Mr. Canada, who had been convicted of felonies in the past, had not only a gun, but also a small quantity of crack and approximately $500 in cash on his person. (*Id.* at 42–45.)

A three-count indictment against Petitioner issued on December 16, 2009. (*Id.*, docket # 1.) Mr. Canada was charged with possession of crack cocaine with intent to distribute, under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count 1); being a felon in possession of a firearm, under 18 U.S.C. §§ 922(g)(1), 921(a), and 924(a)(2) (Count 2); and use and carrying a firearm during and in relation to a drug trafficking crime, under 18 U.S.C. § 924(c)(1)(A)(i) (Count 3). (*Id.*) Counsel was appointed to represent Mr. Canada. (*Id.*, docket # 12.) In early February 2010, Mr. Canada executed a written Plea Agreement with the United States Attorney's Office for the Western District of Michigan. (*Id.*; docket # 14.) At a plea hearing held February 9, 2010, Mr. Canada tendered guilty pleas to Counts 2 and 3 under the Plea Agreement. (*Id.*, docket # 26.)

At the outset of the plea hearing, Mr. Canada was sworn in. (*Id.* at 4.) In response to questions from the Court, Mr. Canada confirmed that his counsel had been available to talk with him about the case; that he had been able to ask his counsel all the questions he had about the legal

proceedings underway; that he had talked with his counsel about his "options and risks and benefits of going in any number of different directions;" that his counsel had been able to answer all of the questions he had; and that he did not feel he needed any more time to talk with his counsel; and that he was ready to proceed with his plea. (*Id.* at 5–6.) Mr. Canada also confirmed that he did not take prescription medication of any kind and that he had no medical condition or mental health condition that should be treated and was not being treated. (*Id.* at 6.) Mr. Canada averred that there was nothing at all interfering with his ability to think or reason or make judgments. (*Id.*) The Court found Mr. Canada competent to proceed. (*Id.* at 7.)

The Court asked Mr. Canada if he had reviewed the Indictment with his counsel. (*Id.* at 7.) Mr. Canada confirmed that he had done so. (*Id.*) The Court focused attention on Counts 2 and 3 in particular, explaining that those two counts were the subject of the anticipated change of plea. (*Id.*) Mr. Canada confirmed that he had no questions about Count 2 and what it charged. (*Id.* at 7–8.) The Court then discussed Count 2 with Mr. Canada in detail. The Court described the elements the government would have to prove beyond a reasonable doubt to a jury absent a guilty plea. (*Id.* at 8–9.) Mr. Canada stated that he had no questions about these elements. (*Id.*) The Court described the range of penalties Mr. Canada faced if convicted of the offense, whether by pleading guilty and having the Court accept the guilty plea or by going to trial and losing. (*Id.* at 9–10.) The Court explained that the possible penalties included anywhere from zero to ten years in prison, up to three years of supervised release, a fine of anywhere from zero to $250,000, and a special assessment of $100. (*Id.*) Mr. Canada stated that he had no questions about the potential penalties. (*Id.*)

The Court conducted a similar inquiry regarding Count 3. The Court explained to Mr. Canada that Count 3 charged him with using or carrying a firearm during and in relation to a

drug-trafficking crime, and asked Mr. Canada if he had any questions about Count 3 generally before talking about it more specifically. (*Id.* at 10.) Mr. Canada said he did not. (*Id.*) The Court described to Mr. Canada the elements the government would have to prove beyond a reasonable doubt to a jury absent a guilty plea. (*Id.* at 11.) Mr. Canada said that he had no questions about these elements. (*Id.*) The Court described the range of penalties Mr. Canada confronted if convicted on Count 3, whether by pleading guilty and having the Court accept the guilty plea or by going to trial and losing. (*Id.*) The Court emphasized to Mr. Canada that Count 3 had a mandatory minimum term of five years in prison, and that the Court would have no discretion to give him a sentence lower than that. (*Id.*) The Court told Mr. Canada that the sentencing range for Count 3 was five years to life. (*Id.*) Mr. Canada said he had no question about this. (*Id.* at 11–12.) The Court explained to Mr. Canada that by statute, whatever the sentence was for Count 3 would have to run consecutive to the Count 2 sentence. (*Id.* at 12.) Mr. Canada said that he understood this. (*Id.*) The Court informed Mr. Canada that in the case of Count 3, the term of supervised release following imprisonment could be up to five years, and that the monetary fine could be up to $250,000 plus a special assessment of $100. (*Id.*) Mr. Canada asked the Court whether the supervised release for Count 3 would run consecutively to the supervised release for Count 2. (*Id.* at 13.) The Court answered that the periods of supervised release would run concurrently. (*Id.*) Mr. Canada said he had no other questions about that. (*Id.*)

The Court reviewed sentencing guidelines principles with Mr. Canada, who confirmed that he had discussed the guidelines with his counsel. (*Id.* at 17–19.) The Court emphasized that no matter what Mr. Canada's guidelines turned out to be, the Court was not bound by the guidelines, but was bound only by the statutory range, zero to ten years imprisonment on Count 2, and five years

minimum to a maximum of life imprisonment on Count 3. (*Id.* at 19.) Mr. Canada said that he understood this. (*Id.*) The Court inquired whether Mr. Canada had any questions at all about potential penalties or the sentencing process. (*Id.*) Mr. Canada asked, "Am I going to get enhanced?" The Court explained that there could be no assurance one way or the other: "[T]he thing I want you to know today is that there are no guarantees about the guidelines today. Not your base guidelines, not any enhancements. All that will be assessed in the future if you plead guilty and I accept the plea." (*Id.*) Mr. Canada confirmed had no other questions about potential penalties or sentencing. (*Id.*)

The Court discussed with Mr. Canada rights he would be giving up by pleading guilty and having the Court accept the guilty plea. (*Id.* at 20–24.) The Court described, among other things, the right to trial by jury, the burden of proof on the government, and the presumption of innocence. (*Id.* at 23.) The Court emphasized that no matter what Mr. Canada chose to do, he would have legal representation at government expense. (*Id.*) Mr. Canada said that he understood. (*Id.* at 23–24.) The Court also explained to Mr. Canada that another set of rights he would waive in the process of pleading guilty are rights to challenge the investigative tactics of the government. (*Id.* at 23.) Mr. Canada confirmed that he had no questions at all about the rights he would be giving up. (*Id.*)

The Court reviewed the Plea Agreement with Mr. Canada in detail. (*Id.* at 24–37.) Mr. Canada confirmed that before he signed the Plea Agreement, he read the sentence above his name stating "I have read this agreement and carefully discussed every part of it with my attorney," and that the sentence was true when he signed it. (*Id.* at 25.) Mr. Canada confirmed that he had no second thoughts and was ready to proceed. (*Id.*) The Court reviewed the provisions of the Plea

Agreement with Mr. Canada, including, but not limited to, a provision waiving certain appellate and collateral attack rights. (*Id.* at 25–37.) The Court explained:

> [I]n general, like any other person, you have the right to appeal a sentence and judgment of the Court, and even after all your regular appeals are exhausted you ordinarily have the right to collaterally attack that judgment and sentence in something called federal habeas or a Section 2255 proceeding . . . . But what this paragraph says is you're going to give up some of those rights, a lot of them in fact, in the process of going through this plea under this Plea Agreement.

Mr. Canada stated that he understood that. (*Id.* at 32.) The Court explained further that "what that [the waiver of appellate and collateral attack rights] means, Mr. Canada, is no matter where the Court sentences you here, with one exception we'll talk about in a minute, even if it's above the guideline sentence, you're waiving your right to appeal that sentence." (*Id.*) Mr. Canada confirmed that he understood that. (*Id.*) Mr. Canada also confirmed that he understood the things he was getting in return that made the waiver useful to him. (*Id.*) The Court informed Mr. Canada that the only exceptions to the waiver of appeal were if the Court sentenced Mr. Canada on an unconstitutional factor, such as race, and if the Court were to sentence him above the statutory maximum, which in Mr. Canada's case was life. (*Id.* at 32–33.) Mr. Canada said that he understood these exceptions. The Court explained to Mr. Canada that the waiver provision in the Plea Agreement also waived "rights you would otherwise have to attack the judgment of the Court or the sentence of the Court following any appeal you would otherwise have, and this too is gone with one exception. (*Id.* at 33.) Mr. Canada said that he understood this. (*Id.*) The Court described the exception: "the only exception would be something that goes to the validity of this waiver itself, something that would claim that [counsel] was somehow ineffective as your advocate in handling this process." (*Id.*) Mr. Canada said that he had no questions about that. (*Id.*) The Court summarized: "so what I want

you to think about here in paragraph 9 is that you're basically, with some very narrow exceptions, giving up your right to challenge in any way the sentence that the Court ultimately imposes here. . . ." (*Id.* at 33–34.) Mr. Canada confirmed that he understood that. (*Id.* at 34.) Mr. Canada also confirmed that he was still ready to go ahead with the waiver and that he felt he had talked the matter through enough with his counsel. (*Id.*)

The Court reviewed the remaining provisions of the Plea Agreement with Mr. Canada. (*Id.* at 35–37.) Among other things, Mr. Canada confirmed that no one from the government had made any promises to him apart from what was stated in the written Plea Agreement. (*Id.* at 37.) The Court asked Mr. Canada whether any one at all had made promises or commitments to him to convince him to plead guilty that had not already been discussed during the plea hearing. (*Id.*) Mr. Canada said no. (*Id.*) The Court asked Mr. Canada whether anyone had pressured, coerced, or threatened him in any way to get him to plead guilty. (*Id.*) Mr. Canada said no. (*Id.*) Mr. Canada confirmed that he was choosing to plead guilty strictly of his own volition. (*Id.*)

Mr. Canada tendered pleas of guilty to each of Counts 2 and 3. (*Id.* 38.) The Court inquired further:

> And those are guilty pleas you're tendering based only on your own free will?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And you understand if I accept those, there will be a conviction on Counts 2 and 3 today based on that guilty plea and acceptance, and those penalties we talked about will be applicable to you as the Court may see fit in its sentencing process?
>
> THE DEFENDANT: Yes, sir.

| | | |
|---|---|---|
| THE COURT: | | Okay. You understand there won't be a trial or a presumption of innocence anymore on these two counts. |
| THE DEFENDANT: | | Yes, sir. |
| THE COURT: | | And more than that, because of the appellate waiver, with very limited exceptions you're ultimately going to have to live with the sentence of the Court.<br>Do you understand that? |
| THE DEFENDANT: | | Yes, sir. |
| THE COURT: | | Okay. Nobody is putting pressure on you to do this against your will? |
| THE DEFENDANT: | | No, sir. |
| THE COURT: | | Okay. And the only things you're relying on from a promise perspective are the promises that the government made to you in that written Plea Agreement? |
| THE DEFENDANT: | | Yes, sir. |

(*Id.* at 39–39.) The Court was satisfied that Mr. Canada was tendering the guilty pleas freely and voluntarily, with a full understanding of his rights and the rights he was giving up, a full understanding of the potential penalties, and that he was choosing of his own free will to proceed and not because anyone was threatening him or pressuring him to do so against his will. (*Id.* at 39.) The Court found the decision to enter the guilty pleas free, voluntary, intelligent, and knowing in all respects. (*Id.*)

The Court explored the factual basis of the pleas with Mr. Canada. (*Id.* at 40–52.) As to Count 2, charging Mr. Canada with being a felon in possession of a firearm, Mr. Canada explained that he had a gun in his possession when he was pulled over for the traffic stop, and that he had several prior felonies. (*Id.* at 40.) As to Count 3, charging Mr. Canada with possession of a firearm

8

during and in relation to a drug trafficking crime, Mr. Canada stated that he had a small amount of crack cocaine hidden in his sock, as well as a firearm in his possession, at the time he was arrested. (*Id.* at 43.) Initially, Mr. Canada stated that he planned to use the crack himself. (*Id.*) The Court explained that the offense charged in Count 3 required an intent to distribute the crack. (*Id.* at 43–44.) Mr. Canada then said that he planned to sell the crack. (*Id.* at 46.) The Court asked Mr. Canada to elaborate, inquiring specifically why Mr. Canada would say at one point that he intended to use the crack cocaine himself, and at another point that he intended to sell it. (*Id.* at 51.) Mr. Canada explained, "I had it for use, but, I mean, if I could have had a sale, I would probably have sold it, you know. I would have sold it at that particular time." (*Id.*) The Court found that this satisfied the intent element. (*Id.* at 52.) After extensive discussion with the parties, the Court concluded that there was sufficient factual basis for the charges in Counts 2 and 3. (*Id.* at 40–52.)

Having found Mr. Canada's decision to tender the guilty pleas knowing, intelligent, and voluntary, and factual basis sufficient to support the guilty pleas, the Court accepted the pleas of guilty to both Counts 2 and 3. (*Id.* at 52.)

  *2. Sentencing*

Mr. Canada's counsel, Mr. Zambon, filed a sentencing memorandum (docket # 20) before the scheduled sentencing hearing. (*Id.*, docket # 20.) Among other things, the sentencing memorandum noted that while an original presentence report did not indicate that Mr. Canada was a career offender and was accepted and approved by the parties, the probation department supervisor later determined the report was in error and that Mr. Canada was a career offender under the Guidelines. (*Id.*) The application of the career offender enhancement resulted in a guidelines calculation of 262–327 months as to Count 2, plus 60 months consecutive on Count 3. (*Id.*, docket

# 38, at 9.) This was well above the guidelines sentence the parties had anticipated. (*Id.*) According to the sentencing memorandum, once the parties learned that the enhancement would apply, Mr. Canada's attorney advised him that he could attempt to withdraw his plea. (*Id.*, docket # 20.) It appeared that Mr. Canada did not wish to withdraw his plea and was ready to proceed with sentencing. (*Id.*) At the time set for sentencing, the Court discussed with Mr. Canada whether under the circumstances he wished to proceed under the existing Plea Agreement. (*Id.*, docket # 38, at 3.) Mr. Canada appeared equivocal. (*Id.*) Mr. Canada stated that he had agreed to enter the plea deal he chose because he believed, based on discussions with his counsel, that he could avoid a career offender enhancement by pleading guilty to Counts 2 and 3. (*Id.* at 4.) Government counsel confirmed that neither party had thought the career offender enhancement would apply at the time Mr. Canada entered the Plea Agreement. (*Id.* at 12.) Government counsel explained that the government had proposed two separate plea agreements to Mr. Canada and that "Mr. Zambon represented to me at the time that Mr. Canada chose to plead to the incident plea agreement believing that would avoid the career-offender provisions." (*Id.*) When it emerged that the career offender enhancement would apply, government counsel told Mr. Zambon that if Mr. Canada wanted to withdraw his plea, the government would not oppose that. (*Id.*)

After further inquiry with Mr. Canada, the Court concluded that under the circumstances, the best course was to appoint new counsel for Mr. Canada. (*Id.* at 18.) The Court made this determination not because it saw any deficiency in Mr. Zambon's representation of Mr. Canada, but so that "somebody who was not part of the original negotiations or the original calculations will have a chance, with only Mr. Canada's interests at heart, to look at everything, including whatever is in

Mr. Zambon's files in their earlier exchanges and help give Mr. Canada an independent judgment, a second opinion." (*Id.* at 18.)

Mr. Zambon's representation of Mr. Canada was terminated, and the Federal Public Defender was appointed to represent Mr. Canada. (*Id.* at docket # 24.) Attorney Richard D. Stroba of the Federal Public Defender's office entered an appearance on behalf of Mr. Canada. (*Id.*) A new sentencing hearing was scheduled. (*Id.*, docket ## 24, 30.) During the weeks preceding the new sentencing hearing, upon further review and analysis, it was determined that the career offender enhancement under the guidelines did not apply to Mr. Canada after all. (*Id.*, docket # 35, at 23–24.) A revised presentence report was prepared. Sentencing proceeded. (*Id.* at 4.) The guidelines calculation for Count 2 without the enhancement was 51–63 months, plus 60 months consecutive on Count 3. (*Id.* at 22.) At the sentencing hearing, the Court accepted the Plea Agreement. (*Id.* at 3.) The Court sentenced Mr. Canada to 60 months on Count 2, plus 60 months consecutive on Count 3, for a total of 120 months, plus three years concurrent supervised release, a fine of $2,000, and a special assessment of $200. (*Id.* at 25, 34–35.) Neither party objected to the guidelines calculation or the sentence the Court imposed. (*Id.* at 35–36.)

3. *Appeal*

Mr. Canada filed an appeal, seeking to vacate his guilty plea. (*Id.*, docket # 39, at 1.) In his appeal, he asserted that the district court failed to establish an adequate factual basis for his guilty plea to the charge of possession of a firearm during and in relation to a drug trafficking crime, as required by FED. R. CRIM. P. 11(b)(3) and failed to advise him of any applicable forfeiture, as required by FED. R. CRIM. P. 11(b)(1)(J). (*Id.* at 2.) Mr. Canada argued that the district court established neither factual basis sufficient to support the intent-to-distribute element nor factual basis

sufficient to support the "during and in relation to a drug trafficking crime" element. (*Id.* at 2–4.) The Court of Appeals rejected both arguments. (*Id.*) Of the intent-to-distribute element, the Sixth Circuit stated:

> The district court engaged in extensive discussion with Canada regarding the intent-to-distribute element, during which Canada explicitly admitted that he possessed the requisite intent to distribute . . . . The district court did not err, plainly or otherwise, by relying on this admission to establish the factual basis for Canada's plea.

(*Id.* at 3–4.) Similarly, the Sixth Circuit determined that the district court correctly found factual basis sufficient to support the "during and in relation to a drug crime" element:

> [T]he district court properly instructed Canada on the relevant element, explaining that the government would have to prove that Canada was carrying the firearm 'because of the drug-trafficking crime' . . . . [T]he evidence showed – and Canada did not dispute – that he was carrying a loaded gun in his holster and crack cocaine in his sock when he was arrested. These facts, which show that the gun had the potential to facilitate the predicate drug trafficking offense, are sufficient to satisfy the 'during and in relation to' element.

(*Id.* at 4.) The Sixth Circuit also rejected Mr. Canada's claim that the district court failed to advise him of any applicable forfeiture. (*Id.* at 5.) Finally, the Sixth Circuit remanded the case for correction of a clerical error in the judgment, explaining that the judgment should have stated "that Canada was convicted of possession of a firearm 'during and in relation to' a drug trafficking crime, the offense with which he was charged and to which he pleaded guilty." (*Id.*) The judgment was corrected. (*Id.*, docket # 42.)

  4. *Section 2255 Motion*

Canada brings this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. He premises the motion primarily on claims of ineffective assistance of counsel, arguing that both his original counsel and substitute counsel were constitutionally ineffective in representing

12

him. Mr. Canada also asserts, as he did before the Court of Appeals, that the district court failed to establish sufficient factual basis for his guilty plea to the charge of possession of a firearm during and in relation to a drug trafficking crime. He has already raised that claim before the Sixth Circuit and lost. (docket # 39). The United States Supreme Court denied his petition for certiorari (docket # 44). The Sixth Circuit decision is therefore final, and that issue is closed.

## LEGAL STANDARDS AND ANALYSIS

A federal prisoner may challenge his custodial status by filing in the district court where he was sentenced a motion under 28 U.S.C. § 2255. A valid section 2255 motion requires a petitioner to show that "the sentence was imposed in violation of the Constitution or laws of the United States, the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Section 2255 affords relief for a claimed constitutional error only when the error had a substantial and injurious effect or influence on the proceedings. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). Non-constitutional errors generally are outside the scope of section 2255 relief, and they should afford collateral relief only when they create a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Id.* (internal quotation marks omitted).

Mr. Canada contends that his sentence was imposed in violation of the Constitution because, in his view, his counsel provided ineffective assistance. Normally, to establish a claim of ineffective assistance, a criminal defendant must show deficient performance and actual prejudice. *Strickland v. Washington*, 466 U.S. 688, 687 (1984); *Roe v. Flores-Ortega*, 528 U.S. 470, 476–77 (2000). A district court "must judge the reasonableness of counsel's challenged conduct on the facts of the

13

particular case, viewed as of the time of counsel's conduct, and judicial scrutiny of counsel's performance must be highly deferential." *Flores-Ortega*, 528 U.S. at 477. Counsel must be "a reasonably competent attorney" and give "reasonable effective assistance." *Strickland*, 466 U.S. 687. Petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Actual prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694. Petitioner has not established either deficient performance or actual prejudice in this case.

Most of Mr. Canada's claims allege various permutations of ineffective assistance of counsel. Some of the claims overlap each other. The Court addresses his claims in turn, grouping some into categories.

Mr. Canada asserts that his original counsel was ineffective in advising him that he could avoid the career offender enhancement by accepting the Plea Agreement under which he pled guilty to Counts 2 and 3. Ultimately, the career offender enhancement did not apply to Mr. Canada. There was neither deficient performance nor actual prejudice. This claim of ineffective assistance fails.

Mr. Canada contends that each of his counsel should have moved to withdraw his guilty plea. He suggests that his original counsel should have moved to withdraw the guilty plea once it became clear that a career offender sentencing enhancement would apply. Once it appeared that the career offender enhancement would apply, the Court gave Mr. Canada the opportunity to explore whether he wanted to move to withdraw the guilty plea and appointed substitute counsel to assist him. Mr. Canada had ample opportunity to move to withdraw his guilty plea. He did not do so. When it became clear that the career offender enhancement would not apply after all, Mr. Canada returned

14

to exactly the position he was in at the original plea hearing, when he tendered guilty pleas knowingly and voluntarily. Mr. Canada still maintains that his substitute counsel was constitutionally ineffective in failing to move to withdraw his guilty plea. Mr. Canada speculates that if his substitute counsel had moved to withdraw his guilty plea and the Court had granted the motion, the government might have offered him a plea deal he considered more favorable, or that he might have gone to trial and obtained a result he viewed as more favorable. This kind of speculation, which is attenuated from any basis in reality, cannot support an ineffective assistance claim.

Similarly, Mr. Canada claims that his original counsel was ineffective in advising him in choosing between two plea offers the government made. According to Mr. Canada, his counsel advised him to accept the plea offer he did accept, but the other plea offer would have carried a lower guidelines range. Mr. Canada speculates about what the guideline range for the other offer would have been, and based on this hypothetical guideline range, speculates that had he accepted the other offer, the Court might have given him a sentence lower than the one he actually received.[1] Again, this speculation is insufficient to support an effective assistance claim. It is also fundamentally inconsistent with Mr. Canada's affirmations during the extended plea colloquy about his decision to proceed under the Plea Agreement.

Mr. Canada contends that his original and substitute counsel should have objected that there was insufficient factual basis for his guilty plea to the charge of possession of a firearm during and

---

[1] Mr. Canada appears to be wrong about his assumptions, even in retrospect. Mr. Canada chose the plea deal to Counts 2 and 3 (rather than Counts 1 and 3) to limit his career offender exposure – something he successfully did. Had he plead guilty to the drug trafficking charge directly, he would certainly have triggered the career offender enhancement and the correspondingly higher guidelines.

in relation to a drug trafficking crime. Mr. Canada tendered his guilty pleas knowingly and voluntarily. He did not move to withdraw his guilty pleas. Under these circumstances, there was no reason for either counsel to challenge the factual basis of his guilty plea to this charge. Moreover, Mr. Canada did have an opportunity to challenge the factual basis on appeal, and the Court of Appeals firmly rejected his claim that factual basis was lacking.

Mr. Canada claims that each of his counsel should have challenged the traffic stop that led to his arrest. Mr. Canada knowingly and voluntarily waived the right to challenge the investigatory tactics of the police through his Plea Agreement. But his argument fails on the merits in any event. He suggests that because he was wearing a seat belt, the traffic stop was invalid. Of course, this does not mean the officer lacked a proper basis for the stop because the officer may reasonably – albeit mistakenly – have believed the seat belt was unfastened. More importantly, Mr. Canada ignores that he also had an air freshener hanging from the rearview mirror in his car, which the Sixth Circuit has found may provide probable cause for a traffic stop in Michigan. *See U.S. v. Davis*, 326 F. App'x 351 (6th Cir. 2009) (air freshener hanging from rearview mirror of vehicle "supplied the quantum of individualized suspicion sufficient to establish probable cause" for traffic stop in light of MICH. COMP. L. § 257.709(1)(c), which prohibits driving a motor vehicle with a suspended object that obstructs a driver's view.). Nor does Mr. Canada address the undisputed fact that when the officer asked him to get out of the car, he exited the car and fled, in itself potentially probable cause for arrest. Under these circumstances, reasonable counsel could have made a strategic decision not to challenge the traffic stop or ensuing arrest. This claim of ineffective assistance fails.

Mr. Canada claims that his original counsel, Mr. Zambon, breached the attorney-client privilege by informing the government during the course of plea negotiations that it was important

to Mr. Canada to avoid a career offender enhancement. But this is exactly the kind of information an advocate authorized to negotiate on behalf of a client may reasonably emphasize in the course of plea negotiations. Moreover, a desire to avoid a career offender enhancement is hardly surprising. Mr. Canada himself indicated on the record in open court his concern about the possibility of a career offender enhancement – one of his only questions during the plea hearing was "Am I going to get enhanced?" Mr. Zambon's disclosure of Mr. Canada's desire to avoid a career offender enhancement does not amount to ineffective assistance. This claim fails.

Mr. Canada claims that his conviction on Count 3 cannot stand because the charge to which he pled guilty, possession of a firearm during and in relation to a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A)(i), is not the charge for which he was indicted. The Indictment charges him with use and carrying a firearm during and in relation to a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A)(i). This is a distinction without a difference. The Indictment clearly charged the section 924(c) offense, and the Court was careful to establish the factual basis for conviction, as the Court of Appeals found.

Mr. Canada claims that the amount of crack cocaine in his possession at the time of his arrest falls below the amount necessary to trigger federal jurisdiction or below the amount necessary to trigger the five year mandatory minimum for the Count 3 charge against him. Mr. Canada is wrong on both claims. The predicate drug trafficking offense for the section 924(c) conviction had no minimum drug quantity threshold. Possessing any amount of crack cocaine with intent to distribute is sufficient to violate 21 U.S.C. § 841(b)(1)(C), and to create a predicate offense for the section 924(c) conviction. The section 924(c) charge and conviction in no way depends on the quantity of crack cocaine involved in the underlying drug trafficking offense. Mr. Canada appears to believe

17

that certain provisions of the Fair Sentencing Act of 2010 apply to his case, but this is simply wrong. As already noted, Mr. Canada's underlying drug trafficking offense under 21 U.S.C. § 841(b)(1)(C) did not involve a crack quantity threshold. Moreover, both Mr. Canada's criminal misconduct and his sentencing occurred before the effective date of the Fair Sentencing Act. So even if he had been convicted based on a threshold quantity of crack cocaine, the new levels of the Fair Sentencing Act would not apply to him. *United States v. Hughes*, 733 F.3d 642 (6th Cir. 2013); *United States v. Blewitt*, ___ F.3d. ___, 2013 WL 6231727, at * 1 (6th Cir. 2013) (en banc).

Before Petitioner may appeal the Court's dismissal of his petition, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(B); FED. R. APP. P. 22(b)(1). The Federal Rules of Appellate Procedure extend to district judges the authority to issue certificates of appealability. FED. R. APP. P. 22(b); *see also Castro v. United States*, 310 F.3d 900, 901–02 (6th Cir. 2002). Thus the Court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); FED. R. APP. P. 22(b)(1); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make the required "substantial showing," the petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The Court does not believe that reasonable jurists would find the Court's assessment of the claim Petitioner raised debatable or wrong.

**ACCORDINGLY, IT IS ORDERED**:

1. Petitioner's Motion to Amend or Correct (docket ## 3, 5) is **GRANTED** to the extent Petitioner seeks to amend his Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (docket # 1) and is **DENIED** in all other respects.

2. Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (docket # 1) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's request for a certificate of appealability is **DENIED**.


Dated: February 4, 2014 /s/ Robert J. Jonker
ROBERT J. JONKER
UNITED STATES DISTRICT JUDGE